FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

## Mar 01, 2023

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| JASON L.,[1] | No.    4:21-cv-5155-EFS |
| Plaintiff, | |
| v. | **ORDER DENYING PLAINTIFF'S SUMMARY-JUDGMENT MOTION, GRANTING DEFENDANT'S SUMMARY-JUDGMENT MOTION, AND AFFIRMING THE ALJ** |
| KILOLO KIJAKAZI, Acting Commissioner of Social Security, | |
| Defendant. | |

Plaintiff Jason L. appeals the denial of benefits by the Administrative Law Judge (ALJ). Because the ALJ's consequential findings are supported by adequate explanation and substantial evidence, Plaintiff fails to show reversible error. The Court therefore affirms the ALJ's decision.

//

/

[1] For privacy reasons, Plaintiff is referred to by first name and last initial or as "Plaintiff." *See* LCivR 5.2(c).

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 1

# I.   Five-Step Disability Determination

A five-step evaluation determines whether a claimant is disabled.[2]  Step one assesses whether the claimant is engaged in substantial gainful activity.[3]  Step two assesses whether the claimant has a medically severe impairment or combination of impairments that significantly limit the claimant's physical or mental ability to do basic work activities.[4]  Step three compares the claimant's impairment or combination of impairments to several recognized by the Commissioner to be so severe as to preclude substantial gainful activity.[5]  Step four assesses whether an impairment prevents the claimant from performing work he performed in the past by determining the claimant's residual functional capacity (RFC).[6]  Step five assesses whether the claimant can perform other substantial gainful work—work that exists in significant numbers in the national economy—considering the claimant's RFC, age, education, and work experience.[7]

---

[2] 20 C.F.R. §§ 404.1520(a), 416.920(a).

[3] *Id.* §§ 404.1520(a)(4)(i), (b), 416.920(a)(4)(i), (b).

[4] *Id.* §§ 404.1520(a)(4)(ii), (c), 416.920(a)(4)(ii), (c).

[5] *Id.* §§ 404.1520(a)(4)(iii), (d), 416.920(a)(4)(iii), (d).

[6] *Id.* §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).

[7] *Id.* §§ 404.1520(a)(4)(v), (g), 416.920(a)(4)(v), (g).

1

## II.    Background

2      In January 2016, Plaintiff filed a Title 16 application claiming disability

3 based, in relevant part, on hypervigilance, depression, behavior problems, post-

4 traumatic stress disorder (PTSD), hypertension, and attention-deficit disorder.[8]

5 Plaintiff alleged an onset date of February 7, 2008.[9]  After the agency denied his

6 application initially and on reconsideration, Plaintiff requested a hearing before an

7 ALJ.[10]

8 **A.    The 2018 Hearing & Decision**

9      In September 2018, ALJ Jesse Shumway held a hearing at which Plaintiff

10 and a vocational expert testified.[11]  After the hearing, the ALJ denied Plaintiff's

11 disability application.[12]  However, in February 2021, this Court reversed the ALJ's

12 decision, ruling the ALJ failed to provide adequate reasons for assigning little

13 weight to the medical opinion of examining psychologist Thomas Genthe, PhD, and

14

15

16 ───────────────

17 [8] AR 227. Because the application filing date starts the relevant period for Title 16

18 claims, the ALJ appropriately considered whether Plaintiff was disabled beginning

19 January 28, 2016.

20 [9] AR 75, 195–203.

21 [10] AR 74–106.

22 [11] AR 31–60.

23 [12] AR 885–94.

the opinions of Plaintiff's treating therapist, Steve Peters, MS, MHP, LCMHCA.[13] The Court remanded the case for the ALJ to reevaluate the opinion evidence and Plaintiff's symptom reports, consider any additional evidence, and conduct anew the sequential evaluation process.[14]

## B.   2021 ALJ Hearing & Decision

In September 2021, ALJ Shumway held a second hearing.[15]  In October 2021, the ALJ issued a written decision again denying Plaintiff's disability claim.[16] The ALJ's analysis and findings therein are largely the same as in his 2018 decision, though the ALJ provided additional explanation on remand.[17]  As to the sequential disability evaluation, the ALJ found as follows:

- Step one: Plaintiff had not engaged in substantial gainful activity since January 28, 2016, the application date;

---

[13] AR 911–34.  During the interim, Plaintiff filed a subsequent Title 16 application, which was consolidated with the instant case. *See* AR 804.

[14] The Court also mandated that the ALJ arrange a psychological consultative examination. AR 933.  The ALJ ordered such an exam, and the Disability Determination Services scheduled it, but Plaintiff did not attend. AR 804, 1224.

[15] AR 857–81.

[16] AR 804–17.

[17] *Compare* AR 885–94, *with* AR 804–17.

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 4

- Step two: Plaintiff had the following medically determinable severe impairments: lumbar disc degenerative disc disease, obesity, hypertension, PTSD, and persistent depressive disorder;

- Step three: Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments;

- RFC: Plaintiff had the RFC to perform light work, except:

  > [H]e cannot climb ladders, ropes, or scaffolds, and can perform all other postural activities only occasionally; he cannot have concentrated exposure to vibration or hazards (e.g., unprotected heights, moving mechanical parts); he is limited to simple, routine tasks and low-level detailed tasks consistent with a reasoning level of 3 or less; he can have no contact with the general public and only superficial contact with coworkers and supervisors, with no collaborative tasks; he requires a routine, predictable work environment with no more than occasional changes; and he is likely to be off task 5–9% of the workday.  After September 8, 2018, the residual functional capacity is the same as above, but reduced to sedentary exertion with no operation of motor vehicles.[18]

- Step four: Plaintiff was not capable of performing past relevant work; and

- Step five: considering Plaintiff's RFC, age, education, and work history, Plaintiff could perform work that existed in significant numbers in the national economy, such as inspector and hand packager, merchandise marker, and collator operator.  Additionally, for the period beginning on September 8, 2018, with the same limitations but further reducing the

---

[18] AR 809.

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 5

work to sedentary and allowing no operation of a motor vehicle, Plaintiff could perform the work of optical assembler, small-parts assembler, and sorting clerk.[19]

When assessing the opinion evidence of record, the ALJ assigned weight as follows:

- great weight to the opinions of the reviewing state-agency medical consultants;

- significant weight to the examining opinion of Janet Strode, ARNP, and Joseph Poston, ARNP, and

- little weight to the treating opinion of Mr. Peters, the examining opinion of Dr. Genthe, and the examining opinion of Caleb Garfield, ARNP-C.[20]

The ALJ also found that Plaintiff's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms, but that his statements concerning the intensity, persistence, and limiting effects of those symptoms were not entirely consistent with the medical evidence and other evidence in the record.  Likewise, the ALJ discounted the lay statements from Plaintiff's mother.[21]

---

[19] AR 817.

[20] AR 812–15.

[21] AR 815.

1

### III.    Standard of Review

2      A district court's review of the Commissioner's final decision is limited.[22]

3 The Commissioner's decision is set aside "only if it is not supported by substantial

4 evidence or is based on legal error."[23]  Substantial evidence is "more than a mere

5 scintilla but less than a preponderance; it is such relevant evidence as a reasonable

6 mind might accept as adequate to support a conclusion."[24]  Moreover, because it is

7 the role of the ALJ—and not the Court—to weigh conflicting evidence, the Court

8 upholds the ALJ's findings "if they are supported by inferences reasonably drawn

9 from the record."[25]  The Court considers the entire record, and the Court may not

10 reverse an ALJ decision due an error that "is inconsequential to the ultimate

11 nondisability determination."[26]

12 ////

13 ///

14 //

15 /

16

17 ———————————————

18 [22] 42 U.S.C. § 405(g).

19 [23] *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012).

20 [24] *Id.* at 1159 (quoting *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir. 1997)).

21 [25] *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012).

22 [26] *Molina*, 674 F.3d at 1115. *See also Lingenfelter v. Astrue*, 504 F.3d 1028, 1035

23 (9th Cir. 2007).

# IV.    Analysis

On appeal to this Court, Plaintiff argues the ALJ erred by (1) assigning inadequate weight to the opinions of Dr. Genthe and Mr. Peters, (2) discounting Plaintiff's symptom reports, and (3) rejecting the lay-witness statements of Plaintiff's mother.[27]  Plaintiff also asserts that, because the ALJ improperly rejected such evidence, the ALJ erred by not finding Plaintiff disabled at steps three and five.[28]  For the reasons set forth below, however, the Court finds Plaintiff has failed to show consequential error.

## A.    Medical Opinions: Plaintiff fails to show consequential error.

As a preliminary matter, the Court addresses Plaintiff's argument that the ALJ erred by "failing to consider the updated evidence of record confirming the disabling findings of Dr. Genthe and treating provider Mr. Peters."[29]  In support, Plaintiff cites to updated medical records that Plaintiff contends support a disability finding, including treatment notes in which Plaintiff describes his PTSD symptoms as "very bad lately" and reports mostly staying in his room.[30]

The ALJ's decision makes clear that he considered the updated evidence. The ALJ even cited in his decision some of the very same records Plaintiff

---

[27] *See generally* ECF No. 15.

[28] ECF No. 15 at 16–18, 20–21.

[29] ECF No. 15 at 3.

[30] *See* ECF No. 15 at 8 (citing AR 1264, 1697, 1699).

highlights on appeal.[31]  Thus, the issue is not whether the updated records support

Dr. Genthe's and Mr. Peters' opinions, but instead whether the entire record—

including the updated evidence—supports the ALJ's decision to assign those

opinions little weight.[32]

### 1.  **Dr. Genthe's 2016 Opinion**

In February 2016, examining psychologist Thomas Genthe, PhD, conducted

a psychological evaluation of Plaintiff.[33]  Dr. Genthe diagnosed Plaintiff with PTSD

and other specified schizophrenia-spectrum disorder.

Dr. Genthe opined that Plaintiff was markedly limited in his ability to:

- communicate and perform effectively in a work setting,
- maintain appropriate behavior in a work setting, and

---

[31] *See, e.g.*, AR 811 (citing AR 1697 and citing treatment notes close in time to those
at AR 1264 and AR 1699); *see also, e.g.*, AR 813 ("I recognize that the claimant has
reported difficulty leaving his house in treatment notes, but this is a subjective
complaint, and I must look to other evidence for clues about the severity of his
difficulty leaving his house."). *Cf. also Black v. Apfel*, 143 F.3d 383, 386 (8th Cir.
1998) ("An ALJ's failure to cite specific evidence does not indicate that such
evidence was not considered.").

[32] *See Lingenfelter*, 504 F.3d at 1035 (The court "must consider the entire record as
a whole, weighing both the evidence that supports and the evidence that detracts
from the Commissioner's conclusion." (cleaned up)).

[33] AR 544–50.

- complete a normal workday and workweek without interruptions from psychologically based symptoms.[34]

Dr. Genthe assessed moderate limitations in Plaintiff's ability to:

- understand, remember, and persist in tasks by following very short and simple instructions,
- adapt to changes in a routine work setting, and
- set realistic goals and plan independently.[35]

As to the remaining basic work activities, Dr. Genthe assessed Plaintiff with no significant limitations.  Dr. Genthe concluded that, for the time being, Plaintiff was "unlikely to function adequately in a work setting."  However, Dr. Genthe gave Plaintiff a "fair" prognosis, stating that the assessed limitations were not expected to last longer than six months.[36]  "Given his response to treatment and willing participation, a period of six months may likely be sufficient to address his treatment needs at least moderately well, and help hi[m] regain the necessary emotional functioning to resume fulltime work related activities."[37]

Because Dr. Genthe had the opportunity to examine Plaintiff, to reject Dr. Genthe's medical opinion, the ALJ was required to provide specific and

---

[34] AR 546–47.

[35] AR 546–47.

[36] AR 547 ("Duration (length of time the individual will be impaired with available treatment): six months.").

[37] AR 547.

legitimate reasons supported by substantial evidence.[38]  So long as one or more of the reasons provided meet this standard, any error in the ALJ's other reasons may be deemed inconsequential.[39]

### a.  *The Temporary Nature of the Assessed Limitations*

In assigning little weight to Dr. Genthe's opinion, the ALJ explained in relevant part,

> Dr. Genthe only opined a duration of 6 months of the claimant's limitations.  Thus, on its face, this opinion is not particularly relevant to SSA disability, which requires a duration of 12 months.  Dr. Genthe suggested the claimant's limitations may diminish with treatment, and the record clearly shows they did.  Thus, even if given great weight, his opinion would not support a finding of disability. [40]

By noting and explaining the significance of Dr. Genthe's temporal limitation on his own opinion, the ALJ provided a specific and legitimate reason for assigning it little weight in the context of determining whether Plaintiff met the Act's definition of disabled.[41]  After all, even if fully credible, temporary limitations

---

[38] *See Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005) ("If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence.").

[39] *See Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1162–63 (9th Cir. 2008); *Molina*, 674 F.3d at 1115.

[40] AR 814 (cleaned up).

[41] *See Bayliss*, 427 F.3d at 1216.

of this kind are insufficient to meet the durational requirement for a finding of disability.[42]  Moreover, the ALJ cited to substantial evidence showing that while Plaintiff was never fully rid of his symptoms—consistent with Dr. Genthe's prediction—Plaintiff nonetheless saw substantial improvement through ongoing mental-health treatment and medication management.[43]

### b.    *Dr. Genthe's Lack of Records to Review*

The ALJ reasoned that "Dr. Genthe examined the claimant one time, . . . and the longitudinal record shows the claimant simply does not have marked limitations in these areas over time.[44]  Because the ALJ gave great weight to the opinions of reviewing psychologists who had *no* opportunity to examine Plaintiff,

---

[42] *See* 42 U.S.C. § 1382c(a)(3)(A) (requiring a claimant's impairment to be expected to last for a continuous period of not less than 12 months); 20 C.F.R. §§ 416.905(a), 416.909 (same); *Carmickle*, 533 F.3d at 1165 (affirming the ALJ's decision to give little weight to a treating physician's opined limitation, when the physician gave the claimant a two-week excuse-from-work letter and later released the claimant to return to work).

[43] *See, e.g.*, AR 435, 497, 582–83, 598, 633, 666, 691, 1233, 1237, 1254, 1550, 1691–92, 1695. *Compare* AR 512–17 (Mr. Peters' 2016 opinion assessing severe limitations in almost every category of mental functioning), *with* AR 783–88 (Mr. Peters' 2018 opinion assessing mostly marked limitations).

[44] AR 814 (cleaned up).

the fact that Dr. Genthe based his opinion on a one-time examination is not, by itself, a valid reason for rejecting it.[45]  Even so, the ALJ's reasoning underscores the fact that Dr. Genthe's opinions were based on comparatively little longitudinal evidence.[46]

When Dr. Genthe conducted his 2016 evaluation, he was unable to review any records; he therefore had no longitudinal record to inform his opinions.[47]  This is in contrast with the medical opinions provided in 2020 by two state-agency consultative psychologists, who were able to review Dr. Genthe's findings in addition to several years' worth of other medical records.[48]  An ALJ may give more

---

[45] See *Orn v. Astrue*, 495 F.3d 625, 635 (9th Cir. 2007) (recognizing that it is not legitimate to discount an opinion for a reason that is not responsive to the medical opinion).

[46] See *Lingenfelter*, 504 F.3d at 1042 (recognizing that the ALJ is to consider the consistency of the medical opinion with the record as a whole and assess the amount of relevant evidence that supports the opinion); *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995) (same).

[47] AR 544 ("No records were reviewed for this evaluation.").

[48] See AR 940–52 (state agency's March 2020 initial consideration); AR 955–68 (state agency's July 2020 reconsideration). *See also* AR 815 (ALJ finding the consultative psychologists' opinions to be "fairly consistent with the record available at the time of their assessments").

weight to an opinion that is based on more record review and supporting evidence.[49]  Thus, the ALJ did not err by assigning greater weight to the later opinions of the state-agency's reviewing psychologists.[50]

### 2.    Mr. Peters' 2016, 2017, 2018, & 2019 Opinions

From March 2016 through May 2020, Steve Peters, MS, MHP, LMHCA, provided therapy to Plaintiff, with sessions occurring roughly once every three weeks.[51]  In August 2016, December 2017, July 2018, and November 2019, Mr. Peters filled out forms regarding Plaintiff's workplace limitations arising from his PTSD and persistent depressive disorder.  In each of the four forms, Mr. Peters opined that Plaintiff would have marked-to-severe limitations in every one of the listed categories of mental functioning.[52]  In 2016 and 2018, Mr. Peters further opined that Plaintiff would likely be off task more than 30% of the workweek and likely miss 4 or more days of work per month.[53]

---

[49] *See* 20 C.F.R. § 416.927(c)(3), (6); *Andrews*, 53 F.3d at 1041.

[50] "The ALJ is the final arbiter with respect to resolving ambiguities in the medical evidence." *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008). *See also Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002).

[51] *See e.g.,* AR 465–72, 503–11, 679–80, 687–740, 1412–1417.

[52] AR 512–17, 537–41, 783–88, 1267–73.

[53] AR 514, 786

In his 2019 opinion,[54] Mr. Peters assessed Plaintiff as having a severe limitation—meaning he would be unable to perform—in the following basic work activities:

- perform activities within a schedule, maintain regular attendance and be punctual within customary tolerances without special supervision;
- perform routine tasks without special supervision;
- adapt to changes in a routine work setting;
- be aware of normal hazards and take appropriate precautions;
- ask simple questions or request assistance;
- communicate and perform effectively in a work setting;
- maintain appropriate behavior in a work setting; and
- complete a normal workday and workweek without interruptions from psychologically based symptoms.

Mr. Peters assessed marked—meaning "very significant"—limitations in the remaining areas:

- understand, remember, and persist in tasks by following very short and simple instructions;
- understand, remember, and persist in tasks by following detailed instructions;
- learn new tasks;
- make simple work-related decision; and
- set realistic goals and plan independently.

---

[54] For brevity, the Court focuses on Mr. Peters' 2019 opinion, as it is the most recent. The Court has nonetheless considered each of Mr. Peters' four opinions and notes that the last three are largely consistent with each other while the 2016 opinion indicates more severe limitations.

To assign little weight to Mr. Peters' opinions, the ALJ was required to provide specific and germane reasons supported by substantial evidence.[55]  Among the reasons provided, the ALJ explained that (1) Mr. Peters is not an acceptable medical source, (2) his opinions are contradicted by other medical opinions, including that of Dr. Genthe, and (3) Mr. Peters' opinions conflict with his own treatment notes and other evidence of record showing that Plaintiff is managing his symptoms.[56]  These reasons suffice.

### a.    *Inconsistencies with Medical Opinions*

Although Mr. Peter's opinions as a treating provider may not be rejected *solely* on the basis that he is not considered an acceptable medical source, this is still a relevant factor that the ALJ was permitted to consider—particularly in the context of measuring Mr. Peters' opinions against those of other medical professionals.[57]  And Mr. Peters' opinions as a treating therapist conflicted with the medical opinions provided by other psychologists, all of whom assessed Plaintiff as having significantly fewer and less-severe mental-based limitations.[58]  Indeed, as the ALJ accurately noted, "Even Dr. Genthe gave much more benign limitations in

---

[55] *Molina*, 674 F.3d at 1111; *Bruce v. Astrue*, 557 F.3d 1113, 1115 (9th Cir. 2009).

[56] AR 812–13.

[57] *See Molina*, 674 F.3d at 1112 (recognizing that the regulations give more weight to the opinions of specialists concerning matters relating to their specialty).

[58] *See, e.g.*, AR 83–84, 101–02.

almost every category."[59]  The ALJ therefore did not err in assigning greater

weight to opinions rendered by acceptable medical sources whose credentials

suggest greater expertise in the field of psychology.[60]

### b.    *Inconsistencies with the Overall Record*

A conflict between a treating provider's opinion and his treatment notes

may constitute an adequate reason to discredit that opinion.[61]  Similarly, an ALJ

may reject an opinion that is inconsistent with the record as a whole.[62]  Here, the

medical records are mixed.  Plaintiff's longitudinal treatment history shows that

his mental-impairment symptoms tended to wax and wane—at least to a degree—

and he was never fully free of them.  But the bulk of the relevant medical records,

including Mr. Peters' own treatment notes, also contain evidence of overall

improvement, effective symptom management, and adequate concentration and

memory.[63]

---

[59] AR 813; *see also* AR 544–50.

[60] *Molina*, 674 F.3d at 1112 (recognizing that the regulations give more weight to
the opinions of specialists concerning matters relating to their specialty).

[61] *See id.* at 1111–12; *Ghanim v. Colvin*, 763 F.3d 1154, 1161 (9th Cir. 2014).

[62] 20 C.F.R. § 416.927; *Orn*, 495 F.3d at 631 (recognizing that the ALJ is to consider
the consistency of a medical opinion with the record as a whole).

[63] In so observing, the Court need not examine whether Plaintiff's symptoms
improved to the point where his impairments "no longer seriously affect his ability

1    Plaintiff filed his application for disability at the end of January 2016.[64]  In

2  February 2016 and early March 2016, Plaintiff repeatedly reported symptoms of

3  anxiety, nightmares, problems sleeping, depression, and difficulty concentrating.[65]

4  However, soon after Plaintiff started receiving prescribed medication and therapy,

5  he began reporting significant improvement, such as telling his providers that he

6  was "[n]o longer isolating" and the "medications are working well for his moods."[66]

7    Over the years, Plaintiff has frequently reported symptoms related to

8  anxiety, depression, and sleep problems, and his mental-health providers have

9  sometimes observed him as presenting with a consistent mood and affect.[67]  But

10  such reports must be viewed against the backdrop of (1) Plaintiff also continuing to

11

12  ―――――――――――

13  to function in a workplace." *Cf. Ghanim*, 763 F.3d at 1162.  Rather, the Court

14  addresses only whether the record contains substantial evidence of improvement to

15  a degree that the ALJ could reasonably find inconsistent with the specific

16  limitations assessed by Mr. Peters. *See id.* at 1161.

17  [64] AR 41.

18  [65] *See* AR 422–43.

19  [66] *See* AR 497; *see also* AR 434–35 (March 2016: Depression symptoms "fairly

20  controlled"; PTSD "improved moderately"; "Sleep has improved, but continues to

21  have some trouble with his anxious, racing thoughts.").

22  [67] *See, e.g.*, AR 610–15 (Jan. 2017); AR 626–32 (June 2017); AR 1267–73

23  (Nov. 2019); AR 1967–98 (July 2021).

report significant improvement and management of his mental-impairment symptoms,[68] and (2) Plaintiff's treatment providers mostly noting him presenting with a normal mood and affect.[69]  Additionally, Plaintiff's treatment providers have consistently observed Plaintiff to exhibit adequate concentration and memory.[70]

---

[68] *See, e.g.*, AR 666 (Oct. 2017: "Pt reports that Remeron is helping stabilize his moods"; "Pt. reports he's not having nightmares & waking up in a panic."); AR 598 (May 2017: Plaintiff reporting worsening insomnia after discontinuing his medication without prescriber guidance); AR 683 (May 2018: Plaintiff "continues to report a management of PTSD symptoms."; AR 633 (July 2018: "Remeron has been really helpful for my moods.  I'm able to get out and do stuff now."); AR 1233 (June 2019: "He states his moods have been good and he has no concerns other than the decreased sleep, which has now resolved."); AR 1250 (Jan. 2020: "He also discussed how he has been effectively managing his mood and PTSD symptoms.").

[69] Admittedly, most of the normal mood/affect findings arise in the context of Plaintiff being treated for physical issues. *See, e.g.*, AR 571, 1387. Even so, given the breadth and severity of the assessed limitations at issue, as well as the general lack of objective findings in the mental-health treatment notes, the ALJ could reasonably find such observations "helpful in stratifying the severity of the claimant's psychological symptoms." AR 814–15.

[70] *See, e.g.*, AR 500, 541, 562, 571, 586–87, 1279, 1286, 1400, 1436, 1663, 1691–98.

Plaintiff argues his various reports throughout the record regarding anxiety, self-isolating behavior, sleep problems, and other PTSD symptoms support a disability finding.[71]  Even if substantial evidence in the record also supports such an interpretation, however, this affords Plaintiff no relief on appeal.[72]  The record contains substantial evidence of improvement and symptom management, much of which is found in Mr. Peters' own treatment notes.  And the Court cannot say it was unreasonable for the ALJ to find such evidence inconsistent with the broad—and relatively extreme—mental limitations assessed by Mr. Peters.  Further, the ALJ rationally interpreted the longitudinal record as being inconsistent with Plaintiff having marked or severe limitations in the areas of memory and concentration.  These inconsistencies therefore amount to specific and germane reasons supported by substantial evidence.[73]

---

[71] *See* ECF No. 15 at 17–18.

[72] *See Burch v. Barnhart*, 400 F.3d 676, 680–81 (9th Cir. 2005) ("Although the evidence . . . may also admit of an interpretation more favorable to [the claimant], the ALJ's interpretation was rational, and [courts] must uphold the ALJ's decision where the evidence is susceptible to more than one rational interpretation." (cleaned up)).

[73] *Molina*, 674 F.3d at 1111; *Bruce*, 557 F.3d at 1115.

1    **B.    Symptom Reports: Plaintiff fails to show consequential error.**

2    Plaintiff argues the ALJ failed to provide adequate reasons for discounting

3    Plaintiff's symptom reports.  Specifically, he asserts the ALJ should have given

4    more credence to Plaintiff's symptom testimony relating to (1) the percentage of

5    time Plaintiff would be off task, (2) his likely absenteeism rate, and (3) his frequent

6    need to lie down and elevate his legs.[74]  As discussed below, however, by

7    articulating and explaining inconsistencies between Plaintiff's symptom allegations

8    and his reported activities, his own prior statements, and medical evidence in the

9    record, the ALJ gave clear and convincing reasons supported by substantial

10   evidence for rejecting the testimony at issue.[75]

11   **1.    <u>Testimony Regarding Being Sequestered in his Room</u>**

12   At the hearings, Plaintiff claimed that his mental impairments caused him

13   to stay in his room "most all day, every day."[76]  Plaintiff testified that he avoided

14   people, but also that "just being outside" makes him anxious and can cause panic

15   attacks—even if no one else is around.  He explained, "It's just leaving—leaving the

16

17   _____

18   [74] *See* ECF No. 15 at 18–21.

19   [75] ECF No. 15 at 18. *See also* 20 C.F.R. § 416.929(c); SSR 16-3p, 2016 WL 1119029,

20   at *7; *Ghanim*, 763 F.3d at 1163 (requiring that, absent a showing of malingering,

21   an ALJ must provide specific, clear, and convincing reasons supported by

22   substantial evidence for rejecting the claimant's symptom reports).

23   [76] AR 42.

1    confines of my room where I feel safe and where I know where everything is, is the

2    biggest issue."[77]  He said leaving his room causes him to feel sick to his stomach,

3    and he indicated this nausea could become so severe as to cause vomiting "every

4    other time" he went out.[78]

5        Plaintiff testified that because of these symptoms, he only leaves his house

6    one or two days a week.[79]  When he does leave his house, he stays out for only short

7    periods of time.[80]  Plaintiff stated, "I want to be back immediately when I leave,

8    but I can be out for an hour or something . . . it's no real set time—it's get out and

9    get right back."[81]

10            a.    ***Inconsistencies with Reported Activities***

11        An ALJ may properly consider inconsistencies between a claimant's

12    symptom testimony and his reported activities.[82]  An ALJ is also permitted to

13    discount a claimant's symptom testimony based on inconsistent statements.[83]

14

15    _____

16    [77] AR 46.

17    [78] AR 42, 45.

18    [79] AR 862.

19    [80] AR 861.

20    [81] AR 861.

21    [82] *See Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989).

22    [83] *See Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996) (The ALJ may consider

23    "ordinary techniques of credibility evaluation," such as reputation for lying, prior

1    In discounting Plaintiff's claims regarding the severity of his mental-

2  impairment related symptoms, the ALJ noted, "At the post-remand hearing, the

3  claimant admitted donating plasma up until shortly after the prior hearing, which

4  required him to be in a room with about 20 other people[.]"[84]  Indeed, in December

5  2017, Plaintiff told a treating provider that he was donating plasma three times a

6  week.[85]  The ALJ reasonably found this reported activity inconsistent with

7  Plaintiff's testimony regarding the extent to which his mental impairments kept

8  him sequestered in his room.

9    The ALJ also highlighted discrepancies in Plaintiff's reports regarding going

10  for walks.[86]  At the 2018 hearing, Plaintiff indicated that from 2016 through about

11  mid-2018, he went on short walks "maybe once or twice a week," saying he

12  considered it a "win" if he made it a block before turning back.[87]  Similarly, at the

13

14

15 _____

16  inconsistent statements concerning symptoms, and other testimony that "appears

17  less than candid.").

18  [84] AR 811. *See also* AR 874.

19  [85] AR 757.  At the 2018 hearing, Plaintiff said he later reduced this to once per

20  month after experiencing a panic attack. AR 39.  At the 2020 hearing, Plaintiff said

21  he ultimately had to stop donating plasma due to tennis elbow. AR 873.

22  [86] AR 811.

23  [87] AR 38, 51.

2020 hearing, Plaintiff testified that the last time had walked any farther than to his mailbox (about 45 ft.) was in 2016 or 2017.[88]

This did not match what he had told his treatment providers.  In December 2017, Plaintiff reported that up until the weather turned cold, "[h]e had been walking."[89]  Then, at the end of January 2018, Plaintiff told a treatment provider that "[h]e has started walking, usually 1 mile in 30 minutes."[90]  And in April 2018, Plaintiff again reported walking daily.[91]  The ALJ reasonably found these reports inconsistent with Plaintiff's walking-related hearing testimony as well as his claims regarding the extent to which his mental-impairments kept him from leaving his room.

### b.  *Inconsistencies with Provider Observations*

Plaintiff testified that, although he can sometimes have short periods of increased energy, "[t]hat doesn't happen often," and he is "usually" too depressed and without sufficient energy "to do anything."[92]  He elaborated, "Like, that includes showering . . . and shaving, it includes washing my clothes."[93]

---

[88] AR 871–72.

[89] AR 757.

[90] AR 761.

[91] AR 765.

[92] AR 862.

[93] AR 862.

The ALJ, however, observed, "Even with the claimant alleging poor sleep and agoraphobia, he had no difficulties attending appointments, and at those appointments appeared well groomed . . . ."[94]  And, contrary to Plaintiff's testimony,[95] the treatment notes of record do not reflect many missed or rescheduled appointments.  Rather, the overall record indicates fairly consistent attendance, with Mr. Peters even stating that Plaintiff "lives at an Oxford house and has daily responsibilities.  He attends all scheduled medical and mental health appointments."[96]  The ALJ therefore reasonably found Plaintiff's claims regarding the severity of his mental-impairment symptoms to be inconsistent with his pattern of presenting as well-groomed and with good hygiene at appointments.[97]

### 2.    Testimony Regarding Lying Down & Elevating Legs

At each of the hearings, Plaintiff testified to needing to lie down and elevate his legs for extended periods several times per day.[98]  The only other evidence Plaintiff cites in support of this claimed limitation is two treatment notes

---

[94] AR 810.

[95] *See* AR 43, 46, 861–62 (Plaintiff testifying that his symptoms cause him to reschedule appointments "[a] lot").

[96] AR 1268 (Nov. 2019). *See also* AR 538 (Dec. 2017: same).

[97] *See, e.g.*, AR 545 (Feb. 2016: "He reported being able to care for his hygiene needs . . . ."); AR 1270 (Nov. 2019: "clean clothing, a good grooming and hygiene").

[98] AR 50–54, 867–68.

containing findings of leg edema—one from January 2017 and the other from the very next appointment in March 2017.[99]  But the record shows that Plaintiff presented without any edema the overwhelming majority of the time.[100]  Indeed, the record as a whole indicates that the leg edema cited by Plaintiff was an isolated and temporary occurrence that was quickly resolved by a change in medication.[101]

Moreover, in January 2018, Plaintiff's treating provider Janet Strode, ARNP, opined that—although his back problems caused marked limitations in several other areas—Plaintiff could nonetheless perform light-level work while sitting or standing for most of the day.[102]  Nurse Strode's opinion is explained and supported by substantial evidence, and Plaintiff does not allege any error in the ALJ's decision to assign it significant weight.[103]  The ALJ was therefore permitted

---

[99] *See* ECF No. 15 at 19 (citing AR 607, 613).

[100] *See, e.g.*, AR 424, 490, 535, 571, 593, 619, 758, 771, 1277, 1383, 1454, 1660.

[101] *See* AR 749–50 (May 2017: after noting, "about 2 months ago, he was changed to lisinopril and hydrochlorothiazide because he had some lower extremity edema," finding in the physical exam, "He exhibits no edema . . . .").

[102] *See* AR 519–20 (assessing Plaintiff with marked limitations in walking, lifting, carrying, handling, pushing, pulling, reaching, stooping, and crouching).

[103] *See Indep. Towers of Wash. v. Washington*, 350 F.3d 925, 930 (9th Cir. 2003) (providing that courts generally need not address an issue if it was not raised or adequately argued by a party).

to reject Plaintiff's unsupported testimony in favor of Nurse Strode's assessment of his physical capabilities.[104]

### C.    Lay-Witness Statements: Plaintiff fails to establish error.

Plaintiff contends that the ALJ improperly rejected the lay-witness statements of Plaintiff's mother.[105]  "Testimony by a lay witness provides an important source of information about a claimant's impairments, and an ALJ can reject it only by giving specific reasons germane to each witness."[106]

The February 2016 functional report filled out by Plaintiff's mother does not indicate any limitations beyond those asserted by Plaintiff in his hearing testimony.[107]  The ALJ rejected the mother's statements for the same reasons he provided in discounting Plaintiff's testimony.[108]  Thus, in providing clear and

---

[104] *See* 20 C.F.R. § 404.1513(d) (2016); *Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014) (recognizing that treating nurses may provide substantial evidence about the severity of a claimant's impairments and how they affect the claimant's ability to work).

[105] ECF No. 15 at 20.

[106] *Regennitter v. Comm'r*, 166 F.3d 1294, 1298 (9th Cir. 1999).

[107] *Compare* AR 244–51, *with,* AR 31–60, 857–881.  On appeal, Plaintiff does not articulate any meaningful difference between his testimony and the statements in the functional report filled out by his mother.

[108] AR 815.

1  convincing reasons for discounting Plaintiff's testimony, the ALJ also provided

2  specific and germane reasons for rejecting the mother's lay-witness statements.[109]

3  **D.    Remaining Arguments: Plaintiff fails to show consequential error.**

4           Plaintiff's arguments that the ALJ erred by not finding Plaintiff disabled at

5  steps three and five necessarily depend on his contentions that the ALJ erred in

6  evaluating his symptom reports and the opinion evidence described above.

7  Because there was no consequential error, these final arguments necessarily fail.[110]

8  The Court also notes that although Plaintiff claims in his briefing that his RFC

9  should include "the need for special supervision,"[111] neither Plaintiff nor the

10  Court's independent review of the record provides any basis for such a limitation.

11  The Court therefore finds no error in this regard.[112]

12  ///

13  //

14  /

15

16

17  [109] *See Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 694 (9th Cir. 2009).

18  [110] *See Magallanes v. Bowen*, 881 F.2d 747, 756–57 (9th Cir. 1989) (allowing ALJ to

19  restrict hypothetical to those limitations supported by substantial evidence).

20  [111] ECF No. 15 at 20–21.

21  [112] Plaintiff—not the Court—must flesh out and support his arguments with law

22  and facts. *See Indep. Towers*, 350 F.3d at 930 ("We require contentions to be

23  accompanied by reasons.").

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

## V.    Conclusion

In affirming the decision of the ALJ, the Court acknowledges that this case involves mixed evidence such that—arguably—the record could have equally supported a disability determination in Plaintiff's favor.  But it is not the role of this Court to weigh conflicting evidence.[113]  "When evidence reasonably supports either confirming or reversing the ALJ's decision, [the Court] may not substitute [its] judgment for that of the ALJ."[114]

For each of the challenged findings, the ALJ provided at least one legitimate reason supported by substantial evidence and adequate explanation.  Similarly, the record as a whole contains "such relevant evidence as a reasonable mind might accept as adequate" to support the ALJ's ultimate determination of nondisability.[115]  Plaintiff has therefore failed to show any reversible error.

Accordingly, **IT IS HEREBY ORDERED**:

1.    Plaintiff's Motion for Summary Judgment, **ECF No. 15**, is **DENIED**.

2.    The Commissioner's Motion for Summary Judgment, **ECF No. 16**, is **GRANTED**.

3.    The Clerk's Office shall enter **JUDGMENT** in favor of the **Commissioner**.

---

[113] *Molina*, 674 F.3d at 1111.

[114] *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1196 (9th Cir. 2004).

[115] *See Hill*, 698 F.3d at 1158.

4.    The decision of the ALJ is **AFFIRMED**.

5.    The case shall be **CLOSED**.

IT IS SO ORDERED. The Clerk's Office is directed to file this order and provide copies to all counsel.

DATED this 1st  day of March 2023.

_Edward F. Shea_
_____
EDWARD F. SHEA
Senior United States District Judge

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS – 30